1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      JAMAAL ANTHONY JOHNSON,                    No.  2:16-cv-2134-EFB

12                   Plaintiff,

13           v.                                    ORDER

14      NANCY A. BERRYHILL, Acting
        Commissioner of Social Security
15
                     Defendant.
16

17

18           Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19      ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and

20      Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The

21      parties' cross-motions for summary judgment are pending.  ECF Nos. 17 & 18.  For the reasons

22      discussed below, plaintiff's motion is granted and the Commissioner's motion is denied and this

23      matter is remanded for further proceedings.

24      **I.      Background**

25           On April 14, 2011, plaintiff filed applications for DIB and SSI, alleging that he had been

26      disabled since January 1, 2008.  Administrative Record ("AR") 280-92.  Plaintiff's application

27      was denied initially and upon reconsideration by the Commissioner.  *Id.* at 163-68, 170-74.

28      /////

                                                   1

1   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and hearings in this

2   case were held on August 21, 2012, October 16, 2014, and February 18, 2015.  *Id.* at 30-111.

3   Plaintiff was represented by an attorney at each of the three hearings.  *Id.*   Vocational experts

4   testified at the August 21, 2012 and February 18, 2015 hearings.  *Id.* at 62-68, 101-07.

5           The ALJ issued a decision on April 8, 2015 and found that, based on the DIB application,

6   plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1]  *Id.* at 24.  The ALJ also

7   found that, based on the SSI application, plaintiff was not disabled under section 1614(a)(3)(A) of

8   the Act.  *Id.*  He made the following specific findings:

9   /////

10

11          [1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions,
    disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
13  "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:
15

16                  Step one:  Is the claimant engaging in substantial gainful
                activity?  If so, the claimant is found not disabled.  If not, proceed
17              to step two.
                    Step two:  Does the claimant have a "severe" impairment?
18              If so, proceed to step three.  If not, then a finding of not disabled is
                appropriate.
19                  Step three:  Does the claimant's impairment or combination
                of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
20              404, Subpt. P, App.1?  If so, the claimant is automatically
                determined disabled.  If not, proceed to step four.
21                  Step four:  Is the claimant capable of performing his past
                work?  If so, the claimant is not disabled.  If not, proceed to step
22              five.
                    Step five:  Does the claimant have the residual functional
23              capacity to perform any other work?  If so, the claimant is not
24              disabled.  If not, the claimant is disabled.

25

26  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27          The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28  evaluation process proceeds to step five.  *Id.*

                                                    2

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

   * * *

2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

   * * *

3. The claimant has the following severe impairments: adjustment disorder, depression[,] and anxiety (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform detailed, complex tasks and simple repetitive tasks; maintain regular attendance; perform work activities on a consistent basis; able to perform noncompetitive work but should avoid high stress level work and avoid jobs that have quotas so it is not fast paced and fairly noncompetitive type work.

   * * *

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

   * * *

7. The claimant was born in 1980 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

   * * *

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1568 and 416.968).

   * * *

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

3

* * *

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 13-24.

Plaintiff's request for Appeals Council review was denied on July 29, 2016, leaving the ALJ's decision as the Commissioner's final decision. *Id.* at 1-3.

## II.     <u>Legal Standards of Review</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

4

**III. Analysis**

Plaintiff argues that the ALJ erred in (1) assigning little weight to the opinions of treating psychiatrist Dr. Alan Koike; and (2) the ALJ's hypothetical question to the vocational expert did not account for Dr. Lacy's finding that plaintiff would have an impaired ability to maintain regular attendance. The court finds, for the reasons stated below, that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Koike's opinions. This matter will be remanded for further proceedings. Having reached this conclusion, the court declines to take up plaintiff's second argument.

**A. Relevant Legal Standards**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

/////

1          **B.     Background**

2          The ALJ, after reviewing the relevant medical records, determined that plaintiff was seen

3    by Dr. Koike on three separate dates –July 18, 2014, September 9, 2014, and January 6, 2015 - at

4    Adult Psychiatric Support Services ("APSS").  AR at 18.  The court has independently reviewed

5    the record and confirmed this finding.[2]  *Id.* at 817-20.  On January 7, 2015, Dr. Koike authored a

6    letter in which he stated that:

7                     [Plaintiff] has been under my care at the APSS Clinic.  He has been
                     a client at the clinic since 7/12/15.[3]  He was last seen on 1/6/15.  He
8                     suffers from major depressive disorder, PTSD and ADHD.  His
                     treatment includes Trazodone 50mg ½-2 tabs qhs prn insomnia,
9                     Celexa to 40mg qd, and Hydroxyzine 25mg TID PRN anxiety.  His
                     symptoms    include    a    depressed    mood,    anxiety,    paranoia,
10                    hypervigilance,  insomnia,  nightmares,  lack  of  focus,  poor
                     concentration, anger and irritability.  *In my opinion, he is unable to*
11                    *work in any capacity.*  He is unable to concentrate and keep focus
                     for extended periods of time.  He [is] unable to handle the stress or
12                    (sic) a normal work environment.  He is unable to be around co-
                     workers, supervisors or the general public.  *I believe his disability is*
13                    *permanent.*

14   *Id.* at 815 (emphasis added).  The ALJ referenced the letter and noted that "[a] statement that an

15   individual is unable to work is not a medical opinion as defined in the regulations, but rather,

16   constitutes an opinion regarding disability, which is an issue reserved to the Commissioner . . . ."

17   *Id.* at 18.  The ALJ went on to find that, although Dr. Koike was an acceptable medical source

18   pursuant to the regulations, his opinions were entitled to little weight.  *Id.* at 18-19.  In reaching

19   ───────────────
              [2] Plaintiff argues that the ALJ misstates the number of times plaintiff was treated at APSS
20   Clinic.  ECF No. 17 at 12.  It is true that records indicate that plaintiff was seen a total of nine
     times at APSS between July 12, 2013 and January 6, 2015.  AR at 817-828.  The records also
21   show, however, that Dr. Koike was the provider at only three of the nine visits.  *Id.* at 817-820.
     Plaintiff was seen by different providers – Denali Tice, Zenaida Pablo, Helena Hart, Peter
22   Knudsen, and Guohua Xia - at his others visits.  *Id.* at 820-828.  It appears that at least some of
     these other providers were medical residents (*id.* at 822) and, as such, it may be that they were
23   providing care under the direct supervision of Dr. Koike or some other attending physician.  No
24   such direction is apparent from the records, however, and the court declines to infer information
     that is not explicitly presented.
25
              [3] This reference to plaintiff's first contact with the clinic as July 12, 2015 is an obvious
26   typographical error given that the letter is dated January 7, 2015.  The provided records date
     plaintiff's first visit to APSS at July 5, 2013.  AR at 827.  The write up of that assessment was not
27   submitted until July 12, 2013, however.  *Id.*  It appears that this was the date Dr. Koike was
28   attempting to reference.

                                                    6

1  this determination, the ALJ noted the discrepancy between Dr. Koike's treatment records - which

2  showed that plaintiff was "alright," took his medications regularly, and his mental status

3  examinations were within normal limits – and the opinion that plaintiff was disabled and unable

4  to work. *Id.* at 18. The ALJ also determined that Dr. Koike's opinions on the "nature and

5  severity of [plaintiff's impairment] were based on plaintiff's subjective complaints rather than on

6  objective findings." *Id.* at 18-19. Finally, the ALJ characterized Dr. Koike's examinations of

7  plaintiff as "limited." *Id.* at 18.

8      By contrast, the ALJ gave great weight to the opinions of consultative psychologist D.

9  Lacy. *Id.* at 17-18. Dr. Lacy conducted a psychological evaluation of plaintiff on December 2,

10  2011. *Id.* at 624. Dr. Lacy observed that plaintiff had "psychomotor agitation and blunted

11  affect." *Id.* at 627. She also noted (and the ALJ emphasized in his decision) plaintiff's self-

12  reported symptoms that his depression increased after he learned that he had cancer, and his

13  mental health symptoms were worsening and included feelings of hopelessness and irritability

14  with people.[4] *Id.* at 625. Dr. Lacy ultimately concluded that plaintiff: (1) could perform detailed

15  and complex tasks; (2) could perform simple and repetitive tasks; (3) had a mildly impaired

16  ability to perform work activities on a consistent basis; (4) could perform work activities without

17  special or additional supervision; (5) had a moderately impaired ability to accept instructions

18  from supervisors, relate/interact with coworkers and the public, and deal with the usual stresses

19  encountered in competitive work; and (6) had a mildly impaired ability to maintain regular

20  attendance. *Id.* at 630. The ALJ referenced these findings in his decision and stated that he was

21  giving Dr. Lacy's opinion great weight because: (1) it was based on her direct examination,

22  findings, and observations; and (2) supported the ALJ's RFC finding.[5] *Id.* at 17-18.

---

23      [4] Dr. Lacy's report indicates that the feelings of hopelessness stemmed, at least in part,
24  from being weaned off of the medications Strattera and Zoloft before he left the prison system.
    AR at 625.

25
26      [5] That finding, also reproduced *supra*, was:

27          After careful consideration of the entire record, the undersigned
            finds that the claimant has the residual functional capacity to
28          perform a full range of work at all exertional levels but with the
            following nonexertional limitations: the claimant is able to perform

7

**C.** **Analysis**

**1.** **Discrepancy Between Opinion and Treatment Notes**

The court finds that the ALJ failed to offer specific and legitimate reasons for discounting the opinions of Dr. Koike. The ALJ highlighted a purported discrepancy between Koike's opinion that plaintiff was disabled and treatment records showing that plaintiff "was alright, took his medications regularly, and his mental status examinations were within normal limits . . . ." *Id.* at 18. Although such a discrepancy can be sufficient, even under the higher "clear and convincing" standard to discount a physician's opinion, *see*, *e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), examination of the relevant records reveals that the ALJ's characterization of their contents was incomplete in this case.

First, Dr. Koike never opined or concluded that plaintiff was "alright." A January 6, 2015 progress note authored by Koike began with "[t]he pt [patient] reports that he is alright." *Id.* at 817. Immediately thereafter, however, plaintiff reported that: (1) he doesn't like talking to people or going out; (2) he thinks people are looking at him and judging him; (3) he has nightmares and occasional flashbacks about his stepfather;[6] (4) he is hypervigilant and has an increase[d] startle response; (5) the past month was "rough" and he felt more depressed; (6) he feels angry at times and is unsure why; (7) he is unable to concentrate and can't focus on activities like watching television or doing things with his son; and (8) that his appetite is low and he feels anxious "a lot of the time." *Id.* Taken in the full context of the progress note, plaintiff's initial statement that he was "alright" appears less like an assessment of his mental state of being and more like a greeting

/////

/////

---

> detailed, complex tasks and simple repetitive tasks; maintain regular attendance; perform work activities on a consistent basis; able to perform noncompetitive work but should avoid high stress level work and avoid jobs that have quotas so it is not fast paced and fairly noncompetitive type work.

AR at 16.

[6] In a previous progress note, Dr. Koike took down plaintiff's report that he had been physically abused by his stepfather. AR at 819.

1  formality. It certainly was not Dr. Koike's medical assessment of plaintiff's condition. Indeed,

2  Koike went on to assess that plaintiff "appears to have PTSD and MDD."[7] *Id.*

3          Second, the fact that plaintiff took his medications regularly is not a persuasive reason for

4  discounting Dr. Koike's opinions regarding plaintiff's disability. At the same January 2015 visit

5  referenced in the foregoing paragraph, Koike did note that plaintiff "takes meds fairly regularly."

6  *Id.* In the next sentence, however, Koike noted that the response to those medications was

7  "partial and inadequate." *Id.* Logically, the fact that a patient frequently takes medications only

8  cuts against a finding of disability *if* that intake appears to ameliorate his symptoms in some

9  meaningful way. Here, the amelioration was specifically reported to be inadequate.

10         Third, it is impossible to read Dr. Koike's treatment notes and conclude that plaintiff's

11  mental state fell within any reasonable definition of "normal limits."[8] As noted above, Dr. Koike

12  concluded that plaintiff was afflicted with PTSD and MDD. *Id.* He also concluded that plaintiff

13  had Attention Deficit Hyperactivity Disorder and noted that plaintiff presented with an anxious

14  mood and affect. *Id.*

15         Thus, this rationale for discounting Dr. Koike's opinions fails to meet the specific and

16  legitimate standard. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the

17  purported existence of an inconsistency is squarely contradicted by the record, it may not serve as

18  the basis for the rejection of an examining physician's conclusions."); *see also Holohan v.*

19  *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be

20  read in context of the overall diagnostic picture he draws. That a person who suffers from severe

21  /////

22

23          [7] PTSD refers to Post-Traumatic Stress Disorder and MDD would appear to refer to Major
Depressive Disorder.

24

25          [8] It is true that some of plaintiff's examinations were within normal limits. For instance,
Dr. Koike himself noted that plaintiff was a low risk for imminent self-harm or suicide, that he
26  was cooperative, and his thought process was linear. AR at 817. The ALJ's opinion made no
attempt to parse these treatment notes in his analysis of why Koike's opinion should be
27  discounted, however. Rather, he simply and summarily stated that "[plaintiff's] mental status
examinations were within normal limits." *Id.* at 18. This gives the impression that plaintiff had a
28  clean, or mostly clean, bill of mental health – an assessment that Koike clearly did not reach.

9

1  panic attacks, anxiety, and depression makes some improvement does not mean that the person's

2  impairments no longer seriously affect her ability to function in a workplace.").

3                    **2.      Subjective Complaints and Limited Examinations**

4          The ALJ also characterized Dr. Koike's examinations of plaintiff as "limited." *Id.* at 18.

5  It is unclear what this term means in this context.  To the extent the ALJ suggests that the number

6  of visits between Dr. Koike and plaintiff (three in this case) was limited and Koike's opinion

7  should be discounted on that basis, the record does not support such a conclusion.  It is true that

8  an ALJ may consider the length of a treatment relationship in determining what weight to afford a

9  physician's opinion.  *See* 20 C.F.R. § 404.1527(c).  That being said, the Ninth Circuit has held

10 that there is no floor for the number of visits necessary to create a treatment relationship.  *See*

11 *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994).  And, in this case, plaintiff had a

12 number of previous visits to the APSS Clinic where Koike practiced.  Counting his three visits

13 with Koike's, plaintiff was seen a total of nine times at the clinic by various providers, dating

14 back to July 2013.  AR at 817-28.  And the diagnoses of these providers largely tracked Koike's.

15 *Id.* at 821 (symptoms of anxiety that border on paranoia); *id.* at 825 (finding patient had MDD).

16         Nor is there a basis in the record to conclude that Dr. Koike's examinations were limited

17 or deficient insofar as they relied "solely on [plaintiff's] subjective complaints."  *Id.* at 18.  This

18 characterization fundamentally misapprehends Dr. Koike's treating role.  In a recent decision the

19 Ninth Circuit explained that:

20          Psychiatric   evaluations   may   appear   subjective,   especially
            compared  to  evaluation  in  other  medical  fields.  Diagnoses  will
21          always depend in part on the patient's self-report, as well as on the
            clinician's  observations  of  the  patient.  But  such  is  the  nature  of
22          psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions
            based on self-reports does not apply in the same manner to opinions
23          regarding mental illness.

24 *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  Koike's treatment notes make clear that

25 he relied in part on his own clinical observations.  At each of the three treatment visits, Koike

26 noted that plaintiff's mood and affect were anxious.  AR at 817-19.  Although these treatment

27 notes are not detailed, they are ultimately sufficient to establish that Koike's opinions were not

28 based solely on plaintiff's self-reported symptoms.  *See Downey v. Astrue*, No. CV 11-02378-SP,

                                                  10

1   2011 U.S. Dist. LEXIS 134596, *17-18 (C.D. Cal. Nov. 22, 2011) (finding a treating physician's

2   notes were not detailed, but nevertheless sufficient where they "identifie[d] plaintiff's subjective

3   complaints, note[d] [the treating physicians's] objective findings, and provide[d] a diagnosis at

4   each examination."). And other providers at the APSS Clinic who made more detailed notes

5   regarding their observations agreed with Koike's observations regarding plaintiff's anxious

6   demeanor. *See, e.g.,* AR at 821 ("Plaintiff is anxious but pleasant and cooperative with interview,

7   avoids direct eye contact . . . [s]peech is rapid rate and rambling though not pressured . . . [m]ood

8   is anxious . . . .").

9                          **3.      Weight Credited to Dr. Lacy's Opinion**

10         In closing, the court briefly notes that it is difficult to square the ALJ's decision to accord

11   great weight to Dr. Lacy's opinion with his decision to discount Dr. Koike's.[9] As noted above,

12   the ALJ commented that Koike only treated plaintiff "for a total of three visits." *Id.* at 18. Yet

13   Lacy only saw plaintiff on a single occasion. *Id.* at 624. Still more confounding is the fact that

14   Lacy's examination occurred in December 2011 - years before the 2014 and early 2015

15   treatments with Koike and years before the relevant ALJ decision. *Id.* As the Ninth Circuit has

16   held, "[a] treating physician's most recent medical reports are highly probative." *Osenbrock v.*

17   *Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001); *see also Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir.

18   1985) (where a claimant has a worsening condition, medical evaluations prepared several months

19   before hearing are not sufficient evidence to rebut more recent conclusions by a treating doctor).

20         For the reasons discussed *infra*, the court will remand for further proceedings. If the

21   ALJ's next decision also accords great weight to Lacy's decision, it should explicitly account for

22   the foregoing in its analysis.

23   /////

24   /////

25

26         [9] Plaintiff does not raise a separate argument concerning the weight given to Dr. Lacy's
     opinion. He does, however, take issue with the ALJ's reliance on Lacy's findings to the extent
27   that such reliance led him to discount Dr. Koike's opinion. ECF No. 17 at 13 ("[T]he ALJ's
     analysis that Lacy's opinion is based on objective findings and observations and that Koike's
28   opinion is based on plaintiff's subjective complaints is ridiculous.").

                                                    11

**4.    Remand for Additional Administrative Proceedings**

Having found, for the reasons articulated above, that the ALJ's decision to discount Dr. Koike's opinion was not supported by specific and legitimate reasons, the court must decide whether to remand for additional administrative proceedings or for the award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). A court should remand for further administrative proceedings, however, unless it concludes that such proceedings would not serve a useful purpose. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016). The court cannot say that additional proceedings would have no utility in the present case. The contradiction in medical opinions between Drs. Koike and Lacy weighs in favor of additional proceedings. Additionally, the generation of additional medical evidence in the intervening years may prove enlightening. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (additional proceedings have utility where "there is a need to resolve conflicts and ambiguities, . . . or the presentation of further evidence . . . may well prove enlightening in light of the passage of time.") (internal quotations and quotation marks omitted).

**IV.    Conclusion**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is DENIED;

3.  This matter is REMANDED for further administrative proceedings; and

4. The Clerk is directed to enter judgment in the plaintiff's favor and close the case.

DATED: March 15, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE